JOHN J. O'CONNOR, APPELLEE, V. JOHN TIMMERMANN,
APPELLANT.

FILED NOVEMBER 19, 1909.  No. 15,815.

Landlord and Tenant: LEASE: FORFEITURE. The leniency of a landlord
in not insisting upon prompt payment of rent when due does not
constitute a waiver of his right to a forfeiture of the lease for
nonpayment of rent.

APPEAL from the district court for Sarpy county:
HOWARD KENNEDY, JUDGE. *Affirmed.*

*Charles W. Haller* and *James T. Begley,* for appellant.

*J. J. O'Connor, I. J. Dunn* and *A. E. Langdon, contra.*

LETTON, J.

This is an action of forcible detainer to recover pos-
session of 280 acres of land. The original written lease
was made for five years, ending March 1, 1905. With the
exception of the first year, as to which it was agreed the
rent should be $750, the stipulated rent was $800 a year,
payable $400 upon March 1 and $400 upon September 1,
annually. At the expiration of the lease it was agreed
that defendant should hold over as under the old lease.
There is no dispute but that during the whole seven years
the tenant never paid his rent promptly at the time due,
and never paid the amount that he actually agreed to pay
by the terms of the lease. A large amount was due at the
end of the five-year term.

Perhaps the theory of the defense is best stated in the
language of counsel: "That the verdict and judgment are
against the weight of the evidence and contrary to law,
chiefly for the reason that O'Connor by a long course of
dealings with Timmermann lulled him into a feeling of
security and repose, and made him believe that failure
to make prompt payment of rentals would not cause a
forfeiture of his lease, and said O'Connor could not with-

out notice as to the future maintain a forfeiture." It is further contended that credit should have been allowed by the court for the flooded lands, the new lease being made on that basis, and that, if this were done, there would be nothing due. The real defense seems to be that the plaintiff agreed that, because about 150 acres of the land were flooded for a number of years, the rent should be reduced. The evidence fails to show any definite agreement of this nature. Moreover, we think this defense cannot be considered in this case, since, whatever may be the actual amount due under the contract, it is evident that at least $500 was long past due at the time the notice to quit was served. In a letter dated February 11, 1907, defendant paid $45, and promised to pay $500 more on the rent, which he never did. The defendant at that time was more than $500 in arrears by his own admission. If the leniency of a landlord in not insisting upon the strict payment of rent according to the terms of a lease would be a defense to an action to recover possession of the premises, then, indeed, the lot of a tenant might often be a hard one, since for their own protection landlords would insist upon strict compliance with the contract.

Defendant cites the case of *Hukill v. Myers*, 36 W. Va. 639, 15 S. E. 151, as sustaining his position, but we think it is not applicable. That was an action in equity to enjoin subsequent lessees from interfering with a tenant in possession, and for specific performance of the lease by the lessor. The tenant had been paying rent, but not within the time required by the lease. Upon the theory that by reason of nonpayment the lease was forfeited, the landlord without acquiring possession or declaring a forfeiture made a second lease under which the defendant lessees sought to take possession. Relief was given, but the power of the court to extend relief to the tenant was placed upon the ground that it was a court of equity, which was founded "to relieve against the hardness of courts of common law, and notably to relieve against

forfeiture, even where it clearly exists." The cases are not parallel. The evidence shows O'Connor had been demanding payment, and accepting such sums as the tenant was willing and able to pay. When the accumulation of arrears became too great, he requested the tenant to come in and have a settlement. Upon his failure to do this, he began this action under the provisions of section 1020 of the code, which provides that the action will lie against tenants holding over their terms, and that "a tenant shall be deemed to be holding over his term whenever he has failed, neglected, or refused to pay the rent or any part thereof when the same became due."

It is further contended that the acceptance of payment of rent after September 1, 1906, constituted a waiver of forfeiture. This cannot be so. The unpaid rent constituted a debt owing from the tenant to the landlord, and the acceptance of money owing upon this debt, in the absence of any agreement or conditions whereby the landlord agreed to waive the forfeiture and reinstate the tenancy, could not affect his right to recover possession. A somewhat similar case is *Cochran v. Philadelphia Mortgage & Trust Co.*, 70 Neb. 100, where a tenant long in arrears attempted to compel the landlord to waive the forfeiture by sending a check in payment of present rent, except that in the present case no attempt was made by the tenant to evade the forfeiture.

The question of the right of defendant to a reduction of the amount of the rent on account of floods can be determined if an action is brought to recover upon the unpaid rent. It is immaterial here, because there is no claim that any portion of the rent for 1906 had ever been paid.

There is no evidence that by the plaintiff's leniency the defendant has been put in any worse position than he would have been in had strict performance on his part been enforced. There is a class of cases holding that one having the right to declare a forfeiture, who does not declare it when he is entitled to do so, waives the right,

but this rests upon the ground of estoppel.  In such cases the lessee has usually incurred large expenditures or made valuable improvements believing that, by the landlord failing to assert the right of forfeiture after breach of condition, it would not be asserted.  This is not such a case.

Under the law, no defense was established and the district court properly directed a verdict for the plaintiff. The judgment of the district court is

AFFIRMED.